Good morning, Your Honor. If it would please the Court, Frank Sproul is appearing for petitioner. This matter presents a number of issues, and I believe if it would be okay with the Court, I'd like to start with the 212C trial reliance issue. I think clearly relief should come before the bond. Can I ask one preliminary question? Is your client currently incarcerated? He's the most patient client I've ever had, Judge. He's been in custody for nearly four years. He's had the keys to the jailhouse since he's been in custody. So he's still in custody, yes. Where is he in custody, and under whose? Eloy, Arizona, where the case originated, with the immigration judge in Eloy, Arizona. Even though he lives in Northern California, it's a federal matter,  and that's where he's been since January 2004. And who is the warden of that installation? Well, based on the various alphabetics. Is that INS? Is that ICE? ICE, yeah, right, the same. Are you sure that it isn't some state authority that he's being kept at on some sort of subcontract? Well, it gets complicated. Yes, you're absolutely right. They're with a private entity who, you know, they contract with the federal government. So they're the day-to-day custodians, but obviously for legal purposes, it's Alberto Gonzalez. You know, they simply rent space. They're a private organization. They're the largest custody center in the west coast. But the cop who is holding him there, is he a federal employee or a state employee or a? I mean, in terms of the actual day-to-day jailer, it is in fact a private entity that contracts with the federal government. All right. Okay. So if it's permissible to quote, I'd like to deal with the 212C reliance argument. And I believe it would be prudential for me to deal with the jurisdictional question, the exhaustion argument that the government made. It is very important, sort of Aristotelian first principles here. Remember where this case began. This is a transfer from the habeas corpus proceedings. This was not a direct appeal from the Board of Immigration Appeals. In terms of the exhaustion requirement, the government's argument that this Court simply has no jurisdiction to hear it is basically the Son case, which is wildly inapplicable. That was a case dealing with administrative exhaustion, wherein the alien withdrew his appeal and brought an action in the very first instance. Here we have a cause of action, i.e., the habeas, that was never decided, which is a remedy that Congress has now repealed. So we're in rather uncharted waters. In that case, I believe the prudential arguments apply. There's no question I did not raise the 212C trial reliance in the habeas action. The habeas action was transferred. There's nothing to review. It is our opinion that this Court is clearly jurisdictionally empowered to hear that. It is a constitutional issue. It argues that St. Cyr should be conflated to a trial, and so it is our position that we're properly here on that issue. Now, I'd like to address the merits of that in terms of this gentleman. St. Cyr obviously occurred in the context of a plea, stating very specifically that AEDPA does not apply retroactively. There is no textual support that Congress intended it to do so, and consequently, all pleas prior to 1996, the alien would still be eligible for 212C, provided he's otherwise eligible. In this case, the alien went to trial. We would ask this Court to adopt the ruling of the Third Circuit. I won't try to pronounce Pannapulla, but essentially they say there's absolutely no reason, there's no difference, that an alien will rely on the existence of current law in the decision to go to trial as much as in a plea. Indeed, I would argue even more so, in the sense that when you give up your right to a trial, if you were having to imagine a colloquy with defense counsel, defense counsel says, well, you're an alien, you're not a citizen. The people are offering three years. You say, are there any immigration consequences? The defense counsel, hopefully, will say, well, there are. However, you would be eligible for a fairly forgiving waiver. Well, what if I go to trial? Well, if you go to trial, the maximum you could receive would be 5 years. If you're acquitted, obviously, you have not, you don't have the stain of a conviction. However, you would still be eligible for relief. It's my argument that that reliance there is greater than in the context of a plea. But again, this is not so generous. I would ask this Court to adopt Sister Circuit. Kennedy, are there any cases that have adopted your submission? Pardon me? Are there any cases that you can cite? Yes. What you've just said now, the sancire applies in a trial sitting as opposed to a plea setting. Sure. I quoted it in our brief. Panapula on page 13, 373, Fed 3rd, 480. That's precisely what that case holds. Actually, subsequent to the briefing here, the Tenth Circuit checked in as well. Hemm v. Mauer, M-A-U-R-E-R, 458, Fed 3rd, 1185, making the precise argument that there's no contradiction, that sancire simply occurred in the context of a plea. That sancire is not plea-specific. So in that respect, my hope is that this Court would adopt that reasoning and send the matter back to the I.J. for a 212C hearing. This gentleman's had a green card since 1969. No one begins to minimize the severity of the criminal matter in this case. However, it did occur in 1979. How do you get around Armendariz-Montoya v. Sancic? That's the Ninth Circuit court case in 2002 that aliens who were convicted after jury trial are not entitled to retroactive relief under 212C. Actually, but that – I believe that case occurs between Edpa and Ira. Ira, the conviction is not as distant as this one. That case is not applicable. This is a pre-1996 case. I don't believe Armendariz-Montoya applies is temporarily the same. I could be wrong and I don't have the site in front of me, but I'm quite sure the Ninth Circuit has not specifically addressed the context of pre-April 1996 and a jury trial in the context of sancire. I'm quite sure the case doesn't stand for that. So, again, my position is in terms of the odd procedural route that has brought us here, that there is no reason in the world the Court cannot address it. That is not precluded because we are in sort of the brave new world of Real ID. That there was – this is a reviewing court and there's nothing to review. That Real ID, by necessary implication, assumes issues of statutory and constitutional magnitude will be brought in the very first instance. So in terms of the 212C argument, we again would ask this Court to adopt the sister circuits of the Third and the Tenth Circuit and remand this matter for an evidentiary hearing pursuant to 212C. That's issue number one. We also raise another issue with the district court, which was the due process argument. The – it's one of the anomalies of immigration law that this gentleman, even apart from the 212C argument that he was eligible, that was not what the Court believed, that he is eligible for citizenship at the same time that he is removable. The regulations are abundantly clear that there is a procedure whereby the judge may terminate proceedings to allow the alien to proceed to a naturalization petition. That was, in fact, pending.  Is that mandatory on the judgment? Absolutely not. No. It's clearly discretionary, and I believe, I tried as much as I could in the brief, to – we were not challenging the judge's discretionary finding. And secondly, would Mr. Alfaro Alfaro be able to process his naturalization application from Mexico? No, because, number one, he would no longer be a resident if he had been removed. That's why, again, I call him the most patient client I've ever had. The – our quarrel with the Court was that, clearly, that there was no due process at all. We're not challenging his discretionary finding. In these particular cases, there's merely a regulation that allows it to happen. However, there was no hearing in this case whatsoever. Mr. Alfaro presented voluminous evidence of his many decades of law abidance, letters from his pastor, family, fellow co-workers. We can only guess as to the IJ's argument. He simply more or less adopted what we call the BIA summary affirmance. I've looked at all the evidence, and I deny the motion to terminate. It is our position that due process demanded at least an evidentiary hearing. He didn't do that. In fact, the record is rather a mess. On page 119 to 120, counsel seemed to think that the judge had already ruled on the motion to terminate. In fact, he asked them, what relief are you seeking? And counsel said, well, I'll just appeal your denial of my motion. And the judge said, well, no, I haven't done that yet, suggesting that either there was an off-the-record discussion or there was never any question he was going to have a real hearing. It is our position that a motion where you're literally terminating proceedings What evidence would you have presented at the evidentiary hearing which you did not present? Well, the testimony of Petitioner, obviously. As to, you know, why did he go to jury trial in 1979? What were the facts and circumstances behind it? The, again, the many, many years of law abidance, the, you know, he would have his wife, his children, his pastor. These people are all prepared to testify. In our opinion, and certainly my experience, this type of motion is about as, you know, it's the nuclear option in terms of relief from deportation. You're asking the Court to terminate. In my experience, it's usually the government that wants a hearing, because they want to cross-examine the Petitioner. They want to get to the bottom of it. Was there a request for a hearing? Absolutely. Well, unfortunately, it didn't appear to be, no. Was there an affidavit of Mr. Alfaro Alfaro as to what he would testify to if there was a hearing? There was not, Judge, no. Okay. Frankly, I guess to some extent, you know, counsel, and I certainly, if I was in the room, I didn't represent him below. In my opinion, you just assume there's going to be a hearing in this matter. Essentially, the judge just took it under submission. So to some extent, I would grant that there was no specific affirmative request for a hearing. Your Honor, am I corrected that the actual attorney that was before the I.J. had gone under the impression that this was just going to be setting a time for a hearing and he was not the attorney that really represented the – it was just kind of a substitute, would you go over and set this hearing date for me? Absolutely. I mean, that was sort of where I said it was a bit of a mess. I mean, that seemed to be the case. And that's why I strongly believe there must have been some sort of off-the-record colloquy. This gentleman was simply there to set a hearing and suddenly basically got the rather Carthaginian finding that, number one, I'm denying everything and good luck on appeal. So is that – to that extent, we believe there was clearly a denial-of-due process. Now, let me ask a question that's a bit of a detour from where you are right now. We have procedures for expedited hearings in this court for someone who's incarcerated. We didn't do that because there was no indication on the briefs, either from you or from the government, that he was incarcerated. Well, certainly in the petition for review, I made it clear he's in custody and I apologize if I didn't. I mean, your client has been incarcerated and we're – we have a separate track for cases in which we've got an incarcerated person. I appreciate that, Justice. And that comment is directed at you and at the government. The government knows this procedure as well. I was particularly rather frustrated with the district court as well. It took 14 months for them to simply – they never even got around to deciding the case. I was filing rather gentle motions and then rather pointed motions to please adjudicate. And so, again, even the district court, this case was never even decided. It was transferred. Congress stepped in and here we are in real ID. If Mr. Alfaro was here, I would apologize. I mean, I am very solicitous of the fact that he has been in custody. The government's brief in this case to us was filed a year ago. But, again, just to reiterate, that would be our second request, is to remand this matter post haste to the petitioner to proceed to the pending naturalization. You know, there's the authority to do that, and our position is he didn't receive any process at all in this case. Finally, there's a third point that was made, which is subsidiary to all this, and that is the rather thorny question of bond. And despite the nearly global reach of him, there is room here for eligibility for bond. This dovetails into our equal protection argument. This gentleman has had a green card since 1969. His conviction was in 1979, and he was an arriving alien. And there are the position of the government is that arriving alien has no, the IJA has absolutely no jurisdiction over an arriving alien. Now, Kim obviously dealt with the global reach. However, there's no doubt whatsoever that if he had been apprehended on this side of the border, the transitional period custody rules would apply. The three BIA cases that deal with this make it abundantly clear that it doesn't, they don't expire. The date of expiration, I believe, is in June 1998. However, if the conviction is prior to 1998 and the alien comes into government detention through other means, the transitional period custody rules apply. Does 1226C even apply here? It says, I read it, it looks as though it applies to detention of someone who's being released from custody. So the government has a right to detain at that time. Now, he was released from custody years ago. This is not your ordinary detainer of someone who's getting out of state prison. No, absolutely not. No. This is someone who is apprehended at entry. That's right. Based on a very distant conviction. So my question is, does 1226C even apply? No. I mean, the government would say that 236C, the general detention statute in Kim, would control. And our position is that there is a peppercorn of this difference in distinction for someone in his place, that if he had been apprehended in Fresno, he would be eligible for bond under transitional period custody rules, and no rational distinction exists for that. And indeed, prior to Kim, this Court had addressed the exclusion, deportation, inadmissible removal distinction, and said the unitary scheme known as removal basically removed that distinction. Unless, you know, we used to have exclusion proceedings and deportation proceedings. We stopped that. There's a unitary scheme. Congress must have done that for a reason. So our position is, in terms of this particular alien, Kim doesn't apply for the simple reason that it's a denial of equal protection, that if he had been apprehended on the other side of the border, he would clearly be eligible for bond. Now, obviously, that's a subsidiary issue. Obviously, the liberty interest is huge here, but our most key arguments are, number one, that this matter ought to be remanded for a 212C hearing. We would ask this Court to adopt the sister circuits that have made that ruling. And, two, he should have a thoroughgoing hearing on the naturalization, the motion to terminate to proceed to naturalization. And if there's any questions, I'll return to my colleague. Roberts. Why don't we hear from the government, and then we'll give you a chance to respond. Thank you. Cynthia Parsons, Assistant U.S. Attorney from Phoenix for the Attorney General of the United States. Now, are you aware of our procedures by which we accelerate our hearing of immigration cases where someone's incarcerated? And you have been aware all along that he's been incarcerated? Yes, Your Honor. And did you ask for or did you notify us in any way that he was incarcerated in order to get that accelerated treatment? We didn't put a statement, Petitioner is in custody. However, the final issues addressed in Petitioner's opening brief and also in the government's responsive brief regards his detention. Obviously, we wouldn't have been arguing about his detention if he were not detained. So I do apologize that we didn't put a separate statement at the end of the brief saying Petitioner is in custody. Well, there is something that's really – I don't have a rule here in front of me, but we have sort of local rules governing that, that you're supposed to say this on the face of the pleading so that we know this. Yes, Your Honor. Are you aware of this? I am aware of that, Your Honor. Yet this wasn't done. No, it was not. And why not? I do not remember why that particular statement was omitted. However – Now, this I'm not sure of. Is it the obligation of not only the Petitioner but also of the government to make us aware of this? Yes, it is, Your Honor. And, however, I would say that by arguing about his detention that – But it's very clear from the scheduling orders in this case we were not aware of this. That may have been – and it may have been an oversight on not looking clearly enough on both parties at the scheduling orders, looking at the time, and then understanding that the court had a different view of Petitioner's custody than did the parties. However – So we have a man from California who's been incarcerated for now quite a number of years in Arizona. He goes through a delay over which you and we have had no control because of the change in statute. But when it comes over here, neither side complies with our rules to notify us of his status. So that we are now hearing this substantially later than we otherwise would have heard it. That does appear to be the case. However, again, Your Honor, I would say that by arguing about his detention – No, I heard you say that. That we would posit that at least in some respect, even if it is in a technical compliance, it certainly would have put the court on notice. I'm not trying to excuse the fact that we did not. The court on notice, if the brief, the whole reason for the rule is that all the briefs and so forth and the material are not submitted to the panel to account for that. The reason for putting it at notification ahead of time is so that it can be calendared ahead of time. Not that somebody looks through the briefs and finds it. The idea is to do it ahead of time so we know about it. Understood, Your Honor. And for that omission, on behalf of the government, we are deeply sorry for that omission. We will take extreme care to ensure – And I think you owe not only the court an apology, but perhaps the client. Certainly. We were not incarcerated. He was. Absolutely, Your Honor. And to – and the government certainly will be glad to apologize, and in writing if necessary, to the Petitioner for that particular omission. Let me ask you about the incarceration. You argue that it's Section 1226C that entitles you to have him under which he is now incarcerated? That is – yes, Your Honor. Now, as I read that statute, it allows incarceration for aliens who are released from state custody. He's clearly not such a person. He was released from state custody, however, prior to October 1998. I'm now reading you the statute, 1226C, detention of criminal aliens, custody. The attorney general is to take into custody an alien who, and it describes various categories. When the alien is released, in other words, when the alien is released from state custody, you may take the person into custody pursuant to this statute. That is correct, Your Honor. If he has been released years ago, 1226 does not apply. And there is no authority, either BIA authority or federal authority, that allows you to take him into custody years later when he shows up at the border. However, the when-release language, as I pointed out in the brief, we were not exactly certain what Petitioner's argument was on that particular case. However, the when Petitioner arrived at the border in 2003, Petitioner's counsel has just conceded that he was an arriving alien. At that time, because after the date of his lawful admission in 1969, he had been convicted of a crime that falls under 1182a2c, he constituted an applicant for admission and an arriving alien. And therefore, the when-release language, because he was not apprehended inside the United States, allowed the government to take him into custody and maintain him in custody. Do you have any case authority that says when released means when apprehended at the border years after he has been released? Yes. We cite authority in our brief for the effect that that language, combined with the transitional custody, transitional period custody rules, does not apply to aliens who arrive at the border. It applies to aliens who are apprehended in the United States, which brings up Petitioner's argument that I'm asking a somewhat different question. Do you have a case squarely holding that detention under 1226c is available when someone comes to the border and the release from prison or from state custody has taken place years earlier? I cannot cite you a case. It is an argument using both the language of the transitional period custody rules combined with the statute. But I think you do have no case that holds what you're trying to argue to us. May not, however. And if it's so, you have been holding this person not merely for the period, sort of the delay after it gets into this court from not notifying us that it was in custody. You've been holding this person under 1226c from the beginning without authority to do so. Even if there was no authority under 1226c, there would be authority for holding criminal aliens who are arriving aliens under I believe it is 1226, on the regulations, 236e. So there is authority for holding criminal aliens who are applicants for admission and arriving aliens. So it is not that the government has not ---- Why is he a criminal alien? Because of his prior conviction? Yes. I mean, he has a conviction. And it does fall under 1182a2. Therefore, he does fall into the category of people who, when they arrive at the border, which he did, can and should be taken into custody and maintained in custody. And under your version of how he's entitled to be taken into custody, do the provisions that would allow him for ---- allow him bail be different? Yes, they are. They are. There are separate procedures for arriving aliens. And would they be more favorable to him than if he were being held under 1226c? They are not more favorable to him because he was a criminal alien arriving at the border. If he was apprehended within the United States, then yes. But I think you're back on your 1226c argument when you say difference between arriving at the border compared to apprehended within the country. Arriving and admissible aliens are not entitled to bond if they are criminal aliens. And so, yes, essentially the bonds are the same. What's the authority for that? What's the authority for that? Regs 236e? Yes. Period. Anything else? No. Not off the top of my head. Okay. However, may I just go back to the beginning? And perhaps this detention issue should not even be before the court. When the motion for transfer was filed with the district court, the district court had already entered an order dismissing and denying the detention issue. The court, however, did not enter or declined to enter judgment at that time because there was also a pending motion to reconsider the court's dismissal of the motion to terminate issue. After it had considered the motion to reconsider and the motion for transfer, the district court then reinstated the motion to terminate issue, was silent regarding the motion, the detention issue, and ordered transfer. Therefore, at that time, it was the government's understanding that what was being However, when we received the opening brief, of course, there was briefing regarding detention, so to prevent a waiver, we addressed the detention issue. However, we do not believe that the detention issue, either one should be here or, in fact, is here. Is this a habeas petition? It was a habeas petition, yes. And in the habeas petition, the petitioner argued that the motion to terminate was improvidently denied and that his detention was inappropriate. And, by the way, did not mention the 212C issue. And going to that just very briefly. No, I would stay on the point of whether or not the detention issue is in front of us. Okay. It seems to me that it is, and I don't quite understand your argument that it is not. Because when the district court ordered the transfer, it had already decided the detention issue. And the detention issue is not an issue that is Is this a law of the case question, then, is that what you're telling me? No. It's under the real idea. It's the jurisdiction under the Real ID Act. The Real ID Act mandated the transfer of habeas petitions dealing with issues regarding final orders removal to the district courts. A detention issue is not dealing with a final order of removal. And the district court had already decided that issue when it granted the transfer. When it did the transfer order, it reinstated the motion to terminate issue, did not reinstate the detention issue, and ordered the transfer. Is it your idea that the Real ID Act eliminates appellate jurisdiction as to the detention of this man? No, it doesn't. It does in this context. In other words, what appropriately should have happened is there should have been a decision on the habeas. It does not eliminate habeas jurisdiction to review detention decisions. There should have been a decision on the detention issue in the district court, which, if adverse to the petitioner, then would have been appealed from the habeas petition, as opposed to transferred. Are you telling us, then, that even if we were to conclude that this man is not properly in detention under 1226C, that we have no power to address that issue? That is what we are saying, and that it should be remanded to the district court for a decision. Oh, my God. Which the district court had already made a decision, but had not entered a judgment. So, yes. Oh, so he gets to stay there as a guest of the State of Arizona or the private contractor working for the INS in the State of Arizona for another couple of years while this gets sorted out? That's your view? Well, to my knowledge, other than the one bond issue, the bond hearing that he requested, he has never requested another bond from either the district director or gone to the IJ and asked for another one, whether he would have jurisdiction to do that. But to my knowledge, he has never asked for anything since then. But this is the reason we don't have jurisdiction to decide the detention issue is because the district court denied a motion to end detention, and the Petitioner did not appeal that under Habeas? No. That's partly right. The district court couldn't. Under Real ID Act, how could he appeal Habeas after the Real ID Act passed? He didn't have a right to Habeas. He had a right to Habeas regarding his detention, not regarding the issues involved in his order of removal. I see. So because the district court had decided to deny the petition regarding the detention and did not, in its order transferring it, say, oh, and by the way, I'm reinstating the detention issue, transferred the case. What actually transferred here is the issue regarding the motion to terminate and not the detention issue. And so that properly was before the district court. Had the district court then made a decision, had it been adverse to the Petitioner or to the government, an appeal would have been filed to this court from the either the denial or the grant of the Habeas on the detention issue. But that is not what happened. It was transferred here on the motion to terminate, which is properly before the court on the transfer. However, we have some jurisdictional arguments regarding that as well. But. Let's stop you for a minute. This is a case to me that it's just screaming of injustice, common sense injustice, about as bad as I've ever seen. We've got a person who is being held under, in Arizona without bond. There's virtually no risk in a situation like that. He's obviously want to be back up with his family. He's and we've got a situation here where there was one. He's been a permanent resident since 1969. He had a rape conviction in 1979. Since that time, his conduct has been exemplary. We've got all of the letters that at least were submitted in the hearing with regard to the termination to seek naturalization. He would be eligible for naturalization naturalization because there has been no situation which in the last five years he has committed anything that would disqualify him. We've got a person who has after the 1979 conviction is serving the time for for that conviction. He was married, has two kids, college age or high school age. Instead of doing what what they would be authorized to have picked him up after the he had served his time and for for the conviction and allowing him to rebuild his life in Mexico. Instead of that, he's a permanent resident. He was allowed to stay here, marry, have citizen children. And now at this point, even after he has gone back and forth to Mexico five times previous to this, all of a sudden he's picked up. And you're asserting this 1979 conviction as disqualifying him from entering, then sending him to be detained, in my opinion, unlawfully detained without bond. Is there such a thing as prosecutorial discretion in the Immigration Service? Certainly, Your Honor. And the Supreme Court has recognized that in the American-Arab decision. Why on earth wouldn't this qualify for that? Well, when he arrived at the Oakland airport, he was an inadmissible criminal alien. Whether he had arrived at various other ports of entry prior to that. If there's ever a situation for exercising prosecutorial discretion, I can't imagine why this wouldn't be at the top of the list of anything I've ever seen. And that may be a very valid opinion. However, the Supreme Court made clear in American-Arab that the Attorney General's decision to initiate proceedings is one of the three discrete areas that is beyond court review. Well, I understand that. I understand it. And that we can't review discretionary decisions. I'm just wondering, from the standpoint of administering or from the standpoint of my being part of a judicial process in the whole United States, that somehow I am foreclosed for various discretionary reasons from rectifying something that is so disingenuous that it's the equivalent of just crying out for prosecutorial discretion or for termination of the proceedings in order to apply for naturalization. And I just can't understand what the government is thinking about in this case. We've got all these people that are convicting and convicted of things and being sent back for drug offenses and all that. Here we've got a guy that completely rectified his life, and we're choosing this person to send back to Mexico and incarcerate for over three years. Going to the motion to terminate, first, as the Court has recognized earlier, the immigration judge may but is not required to terminate. It is a discretionary determination. And in this case, the nature of the record granted, it's an old conviction. We will concede that. However, it is a serious conviction. Very old. 25-year-old. And a very serious one. He was sentenced to five years. It was for forcible rape. He did not apply for naturalization in all of those years. You know, he could have waited five years after 1986, applied for naturalization and been a citizen years before this. However, he didn't. He waited until after he was already placed in proceedings before he applied for naturalization. I have to say, I think what you say is right in terms of the seriousness of the crime and various things related to the seriousness of the crime. However, I think the government has a lot to answer for in its handling of this case once he arrives at the Oakland Airport. I think you were not entitled to incarcerate him under 1226C. And I think after it came to this Court, you had an obligation to inform us in a prominent way in compliance with our rules that he was incarcerated so we'll get to it quickly. The government has nothing to be proud of in the way that it has handled this case. We understand your concern and appreciate that and apologize for our omissions. And what are you going to do about it? Well, first, I would like to argue that the motion to terminate was supported by substantial evidence, that the 212C issue Petitioner's Counsel was arguing that it wasn't raised before the, in the Habeas petition. The critical issue is it wasn't raised before the BIA. So it was not exhausted. To my mind, this case cries out for the government's taking it to our mediation service, along with Mr. Alfaro, to see whether there can be something done. We, of course, are perfectly prepared to adjudicate it. And you may not like the adjudication you get either. That is to say, you may get some law in 1226C that you think you don't like. But as far as I'm concerned, you're going to get it. But you may wish to make life easier and quicker for Mr. Alfaro by some form of mediation. If the Court orders mediation, of course, we will participate. However, dealing with the issues that are currently before the Court, he did not exhaust his 212C argument. Therefore, it is jurisdictionally barred. He, regarding the merits of that, he cannot get around this Court's precedent in Armanduriz-Montoya. It simply states very clearly and holds that a person who pleads or does not plead guilty, but rather is convicted by jury trial, cannot benefit from the analysis in Sancier. Therefore, he is precluded from 212C. The motion to terminate is discretionary in nature, and the Court lacks jurisdiction.  I'm going to stop you on that point. It seems to me, one, he really didn't get a hearing. And we had a substitute attorney coming over for the alien who was expecting to set the time for a hearing at which time the children, the wife, the all of the the pastor, the employer, and so forth, could have been brought before the I.J., which they were not. He was just deciding on the basis of paper matter, which, as you know, is not as effective as actually having a hearing. So it seems at least, at the very least, extremely unfair that they proceeded with the attorney who was not his normal attorney, who was only as a convenience over there to set the time for a hearing, but being stuck by it. I am over my time, but I do want to respond thoroughly to your question. First, when the attorney arrived, he was under the impression the issue had already been decided. So his statement then later or the impression later that somehow he was expecting to have a hearing set on an issue he already, that he thought was already decided is inconsistent. If he believed the issue was already decided, clearly he could not have been expecting to have a hearing set for it. So you are, oh, I'm sorry, Judge Breyer. No, no, no. Well, so, so you're relying on the fact that he was over there thinking it was already decided so that there would be no hearing? No. I was responding to your point that here we had this attorney who would come thinking he was going to get a hearing. That apparently was not the case. Said he was thinking it was already been decided? Yes. Moreover, there's no constitutional right to a hearing. Constitutional and substantive issues are decided on motion every day. The motions were pending. And as, I apologize, one of the Honorable Judges pointed out earlier, what else? There was the letters. There was all the evidence was there. There was never an offer of proof. There was never a motion made for a hearing. But here was an attorney who had come over with the idea, if not to set a hearing, and I think there's something in the record that that was the case. But he had come over with the idea that it had already been decided, so he couldn't not present any additional evidence at all? No. He thought the issue had already been decided. He was coming to go forward. So, in other words, you can arrest a man in Oakland who's lived in California for years, a lawful permanent resident, incarcerate him under 1226C that I think you are not entitled to do so, ship him off to Arizona, far from his family and from his counsel, and have a substitute counsel come in and do a bad job, and you're prepared to justify that? I don't believe he had counsel prior to his incarceration in Arizona. I may be wrong on that, but I don't believe he did. And the Attorney General's decision of where to incarcerate detained aliens is also not reviewable unless it involves I understand there are a lot of unreviewable things here. I'm asking you whether you think it was appropriate for this to happen, and I'm asking you whether you are seeking to justify the behavior here based upon what you've done and therefore you're blaming the lawyer? There's something just deeply wrong with what has happened here. We are justifying what is done because it is supported by the law. I do not think it's justified under 1226C, as I think I've made it quite clear. An inadmissible criminal alien arriving at a port of entry is subject to detention. And if we incorrectly cite it to 1226C as opposed to the regulations of 236, then, again, that is an apology. However, there is authority to detain an alien. 1236, if I'm not mistaken, is dependent upon 1226. Isn't that correct? What's that regulation? It's not for arriving aliens, no. Criminal aliens who are arriving aliens and applicants for admission are subject to mandatory detention. What's more, Petitioner has never filed anything complaining about the length of his detention. He has never since the original bond hearing, which was years ago, asked for an additional bond hearing. I also do want to very quickly correct the person who is holding him in custody is a Ms. Cain. She recently took over from Philip Crawford, who is a district director. He recently retired. And so that is the person who is the warden, if you want to use those terms. That was a question that was made earlier. I am over my time, so unless there are other questions, then we will submit. Do you object to having this heard by mediation? The government never objects to alternative dispute mechanisms, at least in my office. That's wrong. The government sometimes does object. The question is, do you object specifically? No. Okay. All right. Thank you. Roberts. Extraordinarily briefly, Your Honors. And let me apologize to Mr. O'Farrell and consign myself to attorney hell. In Roman numeral IV, I did comply with the circuit rule, and obviously there was some sort of Scrivener's error. I said Petitioner is not in INS custody. So I will fall on the sword there, and I deeply apologize to Mr. O'Farrell. However, I did talk about his detention. That's not good enough. Very briefly, the notion that the 212C argument wasn't brought before the BIA is clearly not applicable. This is from a district court transfer. We're not here looking at the BIA. Counsel, but while you were sitting down, I was reading the Armendariz-Montoya v. Sonchik case. A panel of this Court in 2002 squarely held that 212C was not available to an alien who went to jury trial, who did not plead guilty. What is the date of that jury trial, Your Honor? I don't believe that that, I think, is a key question. I could give a supplemental brief, and again, I didn't cite it, but I believe it's not a brief. Your point is that the date of the jury trial has something to do with it? Oh, it's absolutely central. We're talking about the retroactivity of the preclusive nature of 212C. And I believe, again, I don't have a – I believe that occurred between AEDPA and IHRA. That's all the difference in the world. It was AEDPA that repealed 212C. And this is entirely different. This is many years before, and that's the reliance argument of St. Cyr. And then, finally, the notion – I'm not sure what I was supposed to do. When the district court did address the custody issue, the other issues were alive. I don't know if I was supposed to file an interlocutory appeal to this Court. I mean – Armendariz was convicted in September 1995. Right. Oh. I wasn't aware of that. Okay. Would you have an objection to going to mediation? I mean, I could file a request. My only concern is I do quite a bit of mediation and it's proven to be quite useful. In this particular case, I'm not sure they would – I mean, obviously, the key question is his custodial status. The question is, do you object? I don't object. My only concern is the efficaciousness of it, given the government's position on this case. I'm not sure I'm going to get some kind of agreement. Well, we don't know. Right. Very short answer, of course, I would not object. Okay. Thank you. Thank you. The case of Alfaro v. Gonzalez is now submitted for decision.
judges: Hug, W. Fletcher, Bea